## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNITED STATES OF AMERICA

Criminal No. 3:12-CR-517

- v. -

DILIP D. KACHARE,

Defendant.

-------------------------------------------------------------X

## DEFENDANT, DILIP D. KACHARE'S RESPONSE TO THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF DR. CHARLES P. EWING AND COMPELLING THE PSYCHIATRIC EXAMINATION OF DEFENDANT

Dated:  August 2, 2013

By:_s/Daniel G. Giaquinto
Bar Roll No. 517900
Kern Augustine
Conroy & Schoppmann, P.C.
*Attorneys for Defendant*
Dr. Dilip D. Kachare
1120 Route 22 East
Bridgewater, NJ 08807
(908) 704-8585
dgiaquinto@drlaw.com

## Table of Contents

**Page**

a.   PRELIMINARY STATEMENT............................................................................1

b.   STATEMENT OF FACTS…....……………………………………………..…..1

## ARGUMENT

THE TESTIMONY OF DR. EWING IS HIGHLY RELEVANT TO THE DEFENSE OF
DR. KACHARE ….....................................................................................5

DEFENDANT WAS NOT REQUIRED TO GIVE NOTICE OF THE TESTIMONY OF
DR. EWING………………………………………………….……………………..6

IN THE EVENT NOTICE IS REQUIRED, THE GOVERNMENT HAS BEEN
PROVIDED WITH ADEQUATE NOTICE……………………………………..…….7

AN EXAMINATION OF DR. KACHARE IS NOT PERMITTED IN THIS
INSTANCE……………………………………………………………………….8

CONCLUSION………...………………………………………………….…...12

## INTRODUCTION

On July 19, 2013 the Government moved *in limine* to bar the testimony of Dr. Charles Patrick Ewing ("Dr. Ewing") based on grounds of relevancy and an alleged failure to provide proper notice pursuant to *Fed. R. Crim. P.* 12.2(b).  In addition, assuming the testimony will not be excluded, the Government has requested an independent psychological examination of the Defendant.

This brief is submitted in opposition to the Government's motion.  The Defendant's position is that Dr. Ewing's testimony should not be excluded; it is highly relevant given the factual issues presented in the present case and the Government's theory of this case.  First, Dr. Ewing's testimony is directly relevant for the defense to refute the Government's theory that Dr. Kachare could not have possibly seen the number of patients or worked the number of hours necessary to support the billings.  Second, notice of his testimony in this matter was not required by *Fed. R. Crim. P.* 12.2(b); however, even if notice was required, adequate notice was given.  Lastly, given the nature of Dr. Ewing's testimony, the Government is not entitled to an independent psychological examination under *Fed. R. Crim. P.* 12.2(c).

## FACTS

Defendant, Dilip Kachare, M.D., was indicted on 19 counts on November 14, 2012.  Counts 1 through 3 of the indictment allege health care fraud in violation of 18 U.S.C. § 1347.  Counts 4 through 19 allege mail fraud in violation of 18 U.S.C. § 1341.  The basis for the alleged healthcare and mail fraud counts is that Dr. Kachare committed fraud by billing for work that he did not perform.

An analysis of indictment and the Government's papers in response to Defendant's motions reveals the Government's theory of the case to be essentially a claim of medical services not rendered and/or upcoding based on an "impossible day" scenario.  Through its

experts and evidence, the Government seeks to establish, based on non-binding "typical E & M times" for three individual dates in, and statistics from, an approximate ten year period, as well as "mathematical "impossibilities;" that no doctor, including Dr. Kachare specifically, could work as many hours and see as many patients and render the type of medical services necessary to bill the codes in question.

To support this untenable position, the Government will call three experts; Dr. Robert R. Taylor, III, Dr. Vincent E. Frechette and Dr. Daniel L. Kopp.  These three experts will offer essentially the same opinion; that Dr. Kachare could not have performed the work indicated in the CPT codes billed during the years of the indictment, based on their review of billing records and E & M times for three dates of services.  The three cherry- picked dates of services show that Dr. Kachare worked an extraordinary amount of hours, of which all three of the Government's experts question the validity, based upon their personal experiences.

The crux of the Government's argument, and the proposed testimony of its three experts, therefore, is that there is no way Dr. Kachare could have treated as many patients and rendered the services billed for as he did on the three dates of services, and/or generally over the approximate ten year time span of the indictment.

Of primary importance to Dr. Kachare's defense is the fact that he did work as many hours, see as many patients, and render the type of medical care necessary to support his coding and corresponding billings during the period of the indictment. An essential part of this response is the fact that Dr. Kachare had the physical, mental and emotional ability to support his work efforts.  Dr. Charles Patrick Ewing's (Dr. Ewing's) testimony is highly relevant and directly responsive to the Government's position, both expressed and implied, that Dr. Kachare could not have treated the volume of patients for which he billed.  This testimony effectively explains Dr.

2

Kachare's mental and physical ability to work as long and as hard as he did over a ten year period to justify the billings.

The Government's statement that Dr. Ewing "does not address the issue of whether the defendant provided the medical services required to obtain payment for the claims Dr. Kachare submitted" is both correct and misleading. The Government is correct in that Dr. Ewing will not offer such testimony; however, it is also misleading as said testimony is impermissible as that conclusion is the ultimate issue of fact in this case, which is beyond the scope of expert testimony and must be decided solely by the jury. Moreover, the burden of proof lies solely with the Government to show that Dr. Kachare failed to perform the services for which he billed. To shift that burden to a defense expert is impermissible.

Dr. Ewing is a forensic psychologist and will offer testimony that Dr. Kachare suffers from Obsessive Compulsive Personality Disorder, manifesting itself primarily in an unhealthy preoccupation with his work as a physician. (*See* a true and correct copy of the Notice of Expert Witnesses and Summary of Expert Witness Testimony dated June 24, 2013 attached hereto as Exhibit "A"). He is preoccupied with order, organization, schedules and control; is a perfectionist; is excessively devoted to work and productivity to the exclusion of leisure activities, friendships and even family relationships; is overly conscientious, scrupulous and inflexible; is rigid and stubborn; and is reluctant if not unwilling to delegate tasks to others who do not meet his exacting standards. Dr. Ewing will explain how this personality disorder has led Dr. Kachare, for decades, to work excessively, sleep no more than 4 to 6 hours per night, and show no interests outside of work. Over the years he has developed a strong, if not pathological need, for control and organization. This resulted in a structuring of his life where unwittingly he became controlled by his work, rather than him controlling his work. His entire identity has

come to be defined by how many hours he can work, how many patients he can see, and how much better a job he can do than other physicians. Given this disorder, from a psychological standpoint he is quite capable of working 16- 20 hours per day in excess of 340 days per year.

It is important to note, however, that at no point will Dr. Ewing testify that Dr. Kachare's condition precludes him from committing healthcare fraud and mail fraud as is alleged in the indictment. Dr. Ewing does not opine on Dr. Kachare's competency to stand trial, mental capacity (insanity and diminished capacity), or his ability to form the *mens rea* elements of the charged offenses. Indeed, a jury could very well believe that Dr. Kachare achieved incredibly long and productive work hours as a consequence of his personality disorder, but also had the mental capacity to form the *mens rea* to commit the crimes alleged. Dr. Ewing's testimony is opinion and findings that are based on patient history, examination and principles of psychology. His testimony does not address the mental capacity required in the elements of the charges nor does it intrude upon the "ultimate issue."

## ARGUMENT

### DR. EWING'S TESTIMONY IS HIGHLY RELEVANT TO DR. KACHARE'S DEFENSE

Dr. Ewing's testimony is crucial to the defense of this matter, in that it refutes one of the Government's main contentions, both expressed and implied: it is impossible to provide the medical services billed for over the period of the indictment, impossible due to the number of patients billed for and impossible due to the time required in order to bill for the services that are alleged to be fraudulent (without being able to identify specific instances or documents the Government alleges all billings are fraudulent except it allows $250,000 worth per year as non-fraudulent billings based on peer comparison earnings). Dr. Ewing's testimony is directly relevant to the issue of whether Dr. Kachare was physically and mentally capable of working

4

approximate 16 hour days, on a daily basis, for a period of approximately ten years. It will help explain that although Dr. Kachare's pace and work ethic is seemingly impossible and highly difficult, it is possible and can be done by someone who is driven by his psychological condition.This is a crucially relevant point in the overall defense case. This testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *see United States v. Ruggiero*, 928 F.2d 1289, 1304 (2d Cir.), *cert. denied*, 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991), and should therefore not be excluded.

## DEFENDANT WAS NOT REQUIRED TO GIVE NOTICE OF DR. EWING'S TESTIMONY

Pursuant to *Fed. R. Crim. P.* 12.2(b), notice of expert evidence of a **mental condition** is required "if a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on ... **the issue of guilt.**" (emphasis added)

There is no argument being made by Dr. Ewing, nor any other defense expert, regarding Dr. Kachare's "mental condition" somehow affecting "the issue of guilt." Again, his testimony does not address insanity, diminished capacity, or mental capacity/ability to form the *mens rea* requirement of the charged offenses. The defense does not assert that Dr. Kachare was incapable of forming the requisite *scienter*. Dr. Ewing's testimony therefore, does not touch upon the "issue of guilt."

Based on the foregoing, *Rule* 12.2(b) is clearly inapplicable to the instant matter, and the defense is therefore not required to give notice of Dr. Ewing's proposed testimony in accordance with the rule cited by the Government. The defense has met all of its "pretrial notice" requirements in accordance with all the applicable Rules and the Government cannot preclude

the testimony of Dr. Ewing under the guise that it violates an inapplicable rule, as explained in further detail below.

## IN THE EVENT NOTICE IS REQUIRED, THE GOVERNMENT HAS BEEN PROVIDED WITH ADEQUATE NOTICE

The defense maintains that no special notice pursuant to *Fed. R. Crim. P.* 12.2(b) was required; however, in the event this Court holds that said Rule applies to Dr. Ewing's proposed testimony, the notice previously given to the Government, in the form of a pretrial summary of the proposed testimony of the various defense experts (including Dr. Ewing), is sufficient for the purposes of pre-trial disclosures and substantially comports with the requirements and spirit of the Rule.

*Rule* 12.2(b) does not attempt to decide when expert testimony is admissible on the issue of the requisite mental state; it merely provides that the defendant must give pretrial notice when he intends to introduce such evidence on the "issue of guilt." It is commonly accepted that the purpose of this rule is to prevent trial delays, need for continuances and unnecessary delays that arise as a result of "unfair surprise" by the defense. In *U.S. v. Edwards*, 90 F.R.D. 391, 397 (E.D. Va. 1981), the court held, in a case where the defense gave two days' notice before trial, that "the function of the Rule is frustrated when notice is given after the 'time provided' as well as when the evidence is offered without any prior notice. In either instance, a continuance is or may be required. Orderly trial preparation is disrupted. The defendant is seeking unfair advantage despite the rules, rather than a fair trial under the rules." In its discussion, the *Edwards* court cited the cases of *U.S. v. Hill*, 481 F. Supp. 558 (E.D. Pa. 1979) and *U.S. v. Olson*, 576 F.2d 1267 (8th Cir. 1978), where the Government was notified during trial of expert testimony regarding the issue of the requisite mental state, as examples of inadequate notice that violated the spirit of the law. *Id.* at 396-97.

Here, the Government has known since June 24, 2013 (almost three months prior to trial) the substances and scope of Dr. Ewing's testimony, which has no bearing on the issue of guilt, and allows the Government sufficient time to prepare for cross-examination and rebuttal testimony. (*See* Exhibit "A"). Although the exact procedural notice required by *Rule* 12.2(b) may not have been followed, in line with the spirit of the law, the defense has provided the Government with a narrative summary of Dr. Ewing's proposed testimony. (*See* Exhibit "A"). Certainly there was no attempt by defense counsel to "hide the ball," since direct notice was given to the Assistant United States Attorney as part of the defendant's reciprocal discovery obligations pursuant to *Fed. R. Crim. P.* 16(b)(1)(C). There were no dilatory tactics by the defense nor unfair surprise to the Government, as notice was provided months prior to the start of trial. Moreover, if the Court should find that a Government psychological examination of Dr. Kachare is both permitted and warranted under the Rule, then sufficient time exists for an examination to be completed before the start of trial.

If a violation of the Rule has occurred in the notice given to the Government, then at most it was a procedural oversight that caused the Government no prejudice and has been cured by the timing, form and substance of the discovery notice given directly to the Government.

**AN EXAMINATION OF DR. KACHARE IS NOT PERMITTED IN THIS INSTANCE**

Even if the Court determines that notice was required pursuant to *Fed. R. Crim. P.* 12.2(b), the Court is not required *per se* to compel the defendant to submit to an examination by a Government expert:

> If the defendant provides notice under *Rule* 12.2(b) the court *may*, upon the government's motion, order the defendant to be examined under procedures ordered by the court.

*Fed. R. Crim. P.* 12(c)(1)(B) (emphasis supplied).

The two concepts, notice by the defendant and examination by the Government's expert, are linked and the requirement to provide notice under *Rule* 12.2(b) is a prerequisite to determining whether a Governmental examination is warranted under *Rule* 12(c)(1)(B). As demonstrated above, notice in this case is not required. However, even if notice is required, the requirement of notice does not *per se* trigger the examination.

Pursuant to the Advisory Committee Notes on Federal Rule of Criminal Procedure 12.2(b), "[s]ubdivision (b) is intended to deal with the issue of expert testimony bearing upon the issue of whether the defendant had the 'mental state required for the offense charged.'" The same would hold true in determining whether an examination by a Governmental expert is both permitted and warranted. An examination of case law reveals that the courts have determined, on a case-by-case basis, whether the proffered testimony from the defense expert pertains to the "mental state required for the offense charged." Where it does not, the court may not exercise its discretion to compel the defendant to undergo a psychological examination by the Government's expert.

In *U.S. v. Towns*, 19 F. Supp.2d 64, 65 (W.D.N.Y. 1998), the Government moved for an examination of the mental state of a defendant who was charged with attempted bank robbery and sought to introduce expert testimony at trial about a mental illness to rebut proof that he intended to commit bank robbery. The court held that a District Court did not have authority to order a mental examination of a defendant accused of bank robbery, where although the defendant gave notice that he intended to introduce evidence of mental illness to show a lack of intent to commit the charged crime, the defendant did not assert insanity as a defense, and the District Court had no reasonable cause to believe that the defendant was incompetent to stand trial, as required for a court-ordered examination. *Id.* at 64. The court reasoned that "there does

8

not appear to be any Second Circuit authority interpreting whether an examination may be

ordered under Rule 12.2 when a defendant asserts an intention to introduce evidence of a mental

condition to negate an element of the charge but does not assert insanity or incompetence." *Id.* at

66. Based on a strict reading of the language, though, neither *Rule* 12.2, nor 18 U.S.C. §§ 4241

and 4242, authorize the court to compel an examination under such circumstances. *Id.* The

court acknowledged that a District Court does have the inherent authority to compel an

examination of a defendant pursuant to *Rule* 12.2; however, it further reasoned that:

> This Court, however, is loathe to submit Defendant to a psychiatric
> examination against [his] will in the absence of express statutory or
> administrative authority.... The fact that such an examination will
> assist the Government, which has the greater burden of proof on
> the mens rea issue, does not provide a basis for this Court to help
> "even the playing field." The statutes and rules establish the proper
> procedure for allocating burdens, rights, and obligations in federal
> criminal proceedings, and this Court sees no reason to stray from
> applying the sense and prudence of such rules and laws here.

*Id.* at 67 (*citing U.S. v. Marenghi,* 893 F. Supp. 85, 98 (D. Maine 1995)).

This same principle has been applied to situations where the defendant seeks to introduce

expert evidence regarding mental state as it relates to defenses such as duress, battered women's

syndrome and entrapment. In *U.S. v. Bell,* the Government was not entitled to a mental

examination of the defendant, who intended to offer expert testimony as to mental state and its

relationship to the defense of duress. The court reasoned that although the expert testimony

addressed and indicated state of mind, the duress defense does not involve mental capacity. *Id.*

855 F. Supp. 239 (N.D. Ill. 1994). Likewise, it has been held that a defendant who intended to

introduce expert testimony regarding the defense of battered spouse syndrome in a murder

prosecution could not be compelled to undergo psychiatric or psychological examination, where

defendant had no intention of relying upon an insanity defense or diminished capacity defense.

9

*U.S. v. Williams*, 163 F.R.D. 249 (E.D.N.C. 1995). The same judicial reluctance to require an examination by a Governmental expert was expressed in a case involving the defense of entrapment. *U.S. v. Hill*, 655 F.2d 512, 518 (3d Cir. 1981). There, the Third Circuit found that "we do feel it proper to address one question because it too is likely to be presented again. We must decide whether Rule 12.2(b), concerning 'expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his guilt,' applies to testimony going to the defendant's susceptibility to entrapment." The Third Circuit then held that Rule 12.2(b) does not apply in such circumstances, "given the lack of a clear indication that Rule 12.2(b) will apply to an entrapment defense, we find it an insufficient basis to exclude the proffered testimony in this case." 655 F.2d at 518. *See also United States v. Webb*, 625 F.2d 709, 710–11 (5th Cir.1980)(rule inapplicable where expert testimony was offered to show lack of propensity to commit a violent act); and *United States v. Ellsworth*, 738 F.2d 333, 335 (8th Cir.), *cert. denied*, 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 415 (1984) (ruling Rule 12.2(b) inapplicable to proffered psychiatric testimony that taxpayer had a good faith belief income tax was voluntary)."

Lastly, based on comments made during the motions hearing on July 26, 2013, it is presumed that the Government will attempt to dispute the aforementioned case law due to the fact that they pre-date a 2002 Amendment to Rule 12.2(b). First, the 1998 *U.S. v. Towns* (Western District of New York) case has received no negative treatment, nor has it been differentiated by any subsequent Federal District Court or Appellate case and it remains good law. Second, the 2002 amendment to Rule 12.2(b) does not apply to the instant matter as it merely extended the notice requirement in cases where a defendant intends to offer expert

10

evidence on his mental condition during a capital sentencing proceeding, which is clearly not at issue here.

Here, Dr. Ewing's testimony does not go to insanity, diminished capacity, competency to stand trial or the "mental state required for the offense charged." The testimony is probative to the issue of Dr. Kachare being capable of working, motivated and driven to work, the number of hours required to dispense the medical services indicated in his billing records. At no point will Dr. Ewing testify that Dr. Kachare is mentally incapable of committing the crimes alleged by the Government, and in fact, a jury accepting all of Dr. Ewing's opinions does not preclude findings of guilt on all counts. Therefore, it is clear that Dr. Ewing's proposed testimony has no bearing on the mental state required by Dr. Kachare to commit the crimes alleged, but instead bears on his capability to work the hours and duration required to support his billings.

Based on the foregoing, *Fed. R. Crim. P.* 12.2(b) does not permit the Government to have Dr. Kachare examined by a Government expert as a means of responding to Dr. Ewing's testimony. "Leveling the playing field" for the Government is not a valid reason for an exam that is not legally required nor permitted by *Fed. R. Crim. P.* 12.2.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the relief sought in the Government's Motion *in limine* to preclude the testimony of Dr. Ewing and compel the psychological examination of Dr. Kachare be denied with prejudice.

11